## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

NESTOR RIOS,

      Petitioner,

v.                                                   Case No. 8:17-cv-1161-T-02TGW

SECRETARY, DEPARTMENT OF
CORRECTIONS,

      Respondent.

_____/

### <u>ORDER</u>

On May 17, 2017, Petitioner Nestor Rios filed his Petition under 28 U.S.C. §
2254 for writ of habeas corpus by a person in state custody. Dkt. 1. He seeks relief
from an August 3, 2006, state court conviction. *Id.* at 1. Respondent filed a
response. Dkt. 7. Petitioner filed a reply. Dkt. 18. The Court finds that a hearing is
unnecessary and denies the Petition.

### Background

The criminal activity underlying Petitioner's conviction was an extensive
heroin distribution network bringing heroin from New York to Tampa and
Orlando. The investigation involved "flipping" several conspiracy members to be
informants and tapping several individuals' phones, including Petitioner's. A
detailed description of the underlying events can be found in the state court record.

For purposes of this opinion the relevant conspiracy participants are Oscar Gonzalez, John Maglione, and Miguel Cabrera. Oscar Gonzalez was a dealer who was arrested by police in December 1999 and agreed to record conversations with his supplier, which at the time was Petitioner. John Maglione was named by Oscar Gonzalez as being part of the enterprise and his phone was tapped. Maglione flew to New York City on February 7, 2000, where he met with Petitioner and Miguel Cabrera and was later arrested at LaGuardia Airport with 400 grams of heroin. In addition to being part of the February 7 transaction, Cabrera was named by Gonzales as being his former supplier's supplier.

On August 3, 2006, Petitioner was convicted by a jury of racketeering, conspiracy to commit racketeering, conspiracy to traffic in heroin, and two counts of trafficking in illegal drugs and he was sentenced to thirty years in prison with a twenty-five-year mandatory term.[1] Dkt. 7 at 1. The Second District Court of Appeal affirmed the convictions without an opinion on June 18, 2008. Dkt. 9-11; *see Rios v. State*, 4 So. 3d 1234 (Fla. 2d DCA 2008).

On October 2, 2008, Petitioner filed a petition for writ of habeas corpus in state court alleging ineffective assistance of appellate counsel. Dkt. 9-12. The state court granted the petition in part, finding that convictions on both counts three and

---

[1] This was Petitioner's second trial on these charges. Petitioner was originally found guilty in 2002 but the convictions were reversed based upon inappropriate jury instructions. Dkt. 9-5 at 1–2.

four violated double jeopardy principles and remanded with directions to strike either count three or count four. Dkt. 9-15; *see Rios v. State*, 19 So. 3d 1004 (Fla. 2d DCA 2009). The mandate issued November 23, 2009. Dkt. 9-16. On December 9, 2009, the state circuit court entered an amended judgment and sentence setting aside the judgment and sentence as to count three. Dkt. 9-17. On January 11, 2010, the Florida Supreme Court denied review. Dkt. 9-18.

On June 4, 2010, Petitioner filed a Rule 3.850 motion for postconviction relief. Dkt. 9-19. The motion was denied. Dkts. 9-24 & 9-29. Petitioner appealed and the state appellate court affirmed without opinion. Dkt. 9-33; *see Rios v. State*, No. 2D15-674, 2017 WL 465309, at 1 (Fla. 2d DCA Feb. 3, 2017). The mandated was issued March 2, 2017. Dkt. 9-34. On May 17, 2017, Petitioner filed the instant federal Petition for writ of habeas corpus. Dkt. 1.

## Standards of Review

This petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Wilcox v. Fla. Dep't of Corr.*, 158 F.3d 1209, 1210 (11th Cir. 1998). AEDPA "establishes a highly deferential standard for reviewing state court judgments." *Parker v. Sec'y for Dep't of Corr.*, 331 F.3d 764, 768 (11th Cir. 2003). This type of review does not allow relief of a state court conviction on a claim:

> that was adjudicated on the merits in the State court proceedings' unless the state court's decision was '(1) . . . contrary to, or involved an

3

unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or (2) . . . based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'

*Nejad v. Attorney Gen., State of Ga.*, 830 F.3d 1280, 1288 (11th Cir. 2016) (quoting 28 U.S.C. § 2254(d)).

"Clearly established Federal law" means holdings of the U.S. Supreme Court "as of the time of the relevant state-court decision." *Id.* at 1288–89. "Contrary to" requires a state court conclusion "opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Id.* at 1289 (citations omitted) (alterations in original). The "unreasonable application" clause applies only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* (citation omitted) (alterations in original).

However, a state court's factual determination "is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Id.* (citation omitted). AEDPA "requires federal habeas courts to presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.'" *Id.* (citation omitted). This is a "demanding but not insatiable standard, requiring proof that a claim is highly

4

probable." *Id.* (citation and internal quotation marks omitted). Further, this standard applies even if the state court does not provide the reasoning behind its decision because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Sec'y for Dep't of Corr.*, 278 F.3d 1245, 1254 (11th Cir. 2002).

## Discussion

A. <u>Timeliness</u>

Federal habeas petitions are subject to a one-year statute of limitation. 28 U.S.C. § 2244(d)(1) (2018). It begins running on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." *Id.* § 2244(d)(1)(A). The clock stops running for the "time during which a properly filed application for State post-conviction . . . judgment or claim is pending[.]" *Id.* § 2244(d)(2). The record shows the petition is timely.

B. <u>Merits</u>

In Grounds One, Two, and Three Petitioner argues that he was denied due process and equal protection because of various alleged errors regarding audio tape recordings of Petitioner's conversations. In Grounds Four through Twelve Petitioner alleges various ineffective assistance of counsel claims. In Ground Thirteen, Petitioner alleges the cumulative effect of these errors requires granting him relief from the judgment. Each of these Grounds will be discussed in turn.

1. Ground One, Two, and Three

In Ground One, Petitioner alleges that he was denied due process and equal protection of the law when the trial court allowed recordings to be played in Spanish and permitting the jury to use translations in English prepared by an involved law enforcement officer. In Ground Two, Petitioner alleges that he was denied due process and equal protection of the law when the trial court permitted the State to use an inaudible tape recording. In Ground Three, Petitioner alleges that he was denied due process and equal protection of the law when the trial court erred by permitting the lead detective to give his opinions as to the content of the recorded conversations. Respondent argues that Grounds One through Three are unexhausted and procedurally barred. Dkt. 7 at 4.

First, Petitioner concedes that he did not make an equal protection argument in state court. Thus those claims cannot be brought on federal habeas review. Dkt. 18 at 2. However, Petitioner argues that, although not explicitly alleged, his due process argument was implied in his state court briefs. Dkt. 18 at 2.

In order for a federal court to review a habeas claim it must be "fairly presented" to the state court. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004). A claim is not fairly presented if the state court "must read beyond a petition . . . that does not alert it to the presence of a federal claim." *Id.* at 32. Requiring courts to follow a "daisy chain" to divine the federal constitutional claim is an insufficient

presentation of the federal claim. *See Howell v. Mississippi*, 543 U.S. 440, 443–44 (2005) (holding federal claim was not properly presented where case relied on by petitioner cited a case, which cited another case, which cited the relevant case).

The Supreme Court has provided the lower courts with guidance for determining whether a habeas petitioner has met the "fair presentation" requirement. In *Picard v. Connor*, the Court held that, for purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief. *Picard v. Connor*, 404 U.S. 270, 277 (1971). In announcing that "the substance of a federal habeas corpus claim must first be presented to the state courts," the Court rejected the contention that the petitioner satisfied the exhaustion requirement by presenting the state courts only with the facts necessary to state a claim for relief. *Id.* at 278.

An issue that was not properly presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, that is, procedurally barred from federal review. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 839–40, 848 (1999); *Bailey v. Nagle*, 172 F.3d 1299, 1302–03 (11th Cir. 1999). This Court will also consider a claim procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default. *See Coleman v. Thompson*,

7

501 U.S. 722, 734–35 & n.1 (1991); *Caniff v. Moore*, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); *Chambers v. Thompson*, 150 F.3d 1324, 1326–27 (11th Cir. 1998) (applicable state procedural bar should be enforced by federal court even as to a claim which has never been presented to a state court); accord *Tower v. Phillips*, 7 F.3d 206, 210 (11th Cir. 1993); *Parker v. Dugger*, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308 (1991).

Here, Petitioner raised these issues on direct appeal in state court but did not present the issues to the state court as federal claims. In his initial brief Petitioner did not cite "in conjunction with the claim the federal source of law on which he relies" or cite to a federal case which decided this issue, or even label his claim as a federal issue. Dkt. 9-5; *See Baldwin*, 541 U.S. at 32. Therefore, this claim is not "exhausted."

Further, Petitioner has no available avenue through which he may properly exhaust his federal claim in the state courts. Petitioner acknowledges this in his reply brief. Dkt. 18 at 5. Therefore, this claim should be considered procedurally defaulted.

To overcome a procedural default such that the federal habeas court may consider the merits of a claim, the petitioner must show cause and prejudice or a

fundamental miscarriage of justice. *Tower*, 7 F.3d at 210; *Parker*, 876 F.2d 1470.

"For cause to exist, an external impediment, whether it be governmental

interference or the reasonable unavailability of the factual basis for the claim,

must have prevented petitioner from raising the claim." *McCleskey v. Zant*, 499

U.S. 467, 497 (1991) (quoting *Murray v. Carrier*, 477 U.S. 478, 488, (1986)).

Lack of counsel or ignorance of available procedures is not enough to establish

cause. *Tower*, 7 F.3d at 210.

Petitioner has not established cause and prejudice or a fundamental

miscarriage of justice and cannot overcome the procedural default. Thus, Grounds

One, Two, and Three are not exhausted and procedurally barred.

2. Grounds Four through Thirteen

In Grounds Four through Twelve Petitioner claims that various actions or

inactions by his trial counsel amounted to ineffective assistance of counsel in

violation of the Sixth Amendment. In Ground Thirteen Petitioner argues that the

cumulative effect of counsel's errors requires relief.

Counsel is ineffective under the Sixth Amendment if "(1) counsel's

performance was deficient; and (2) the deficient performance prejudiced the

defense such that petitioner was deprived of a fair trial." *Dill v. Allen*, 488 F.3d

1344, 1354 (11th Cir. 2007) (citing *Strickland v. Washington*, 466 U.S. 668, 687

(1984)). But in the habeas context, "[t]he question is not whether a federal court

9

believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citation and internal quotation marks omitted). "If there is 'any reasonable argument that counsel satisfied *Strickland*'s deferential standard,' then a federal court may not disturb a state-court decision denying the claim." *Hittson v. GDCP Warden*, 759 F.3d 1210, 1248 (11th Cir. 2014) (citation omitted).

"[I]t is a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding. . . . [I]t is rarer still for merit to be found in a claim that challenges a strategic decision of counsel." *Nance v. Warden, Georgia Diagnostic Prison*, 922 F.3d 1298, 1303 (11th Cir. 2019) (internal citations omitted). A strategic decision by counsel is only subject to federal habeas review when it was so "patently unreasonable that no competent attorney would have chosen it." *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983).

a.  Ground Four

In Ground Four, Petitioner argues that he was denied his Sixth Amendment right to effective counsel because of his trial counsel's failure to impeach key state witnesses with their prior inconsistent statements. Petitioner alleges that Oscar Gonzalez's and Detective Massucci's statements at his second trial differed from

their statements at his first trial and their depositions. Dkt. 1 at 15. Respondent

argues that the postconviction court's decision was supported by the facts and that

Petitioner failed to demonstrate deficient performance or prejudice. Dkt. 7 at 8–9.

In denying relief, the state postconviction court found that Petitioner's trial

counsel had reviewed the prior transcripts and that his strategic choice was not to

"nit-pick" the witnesses' testimony in order to preserve credibility with the jury.

Dkt. 7 at 7. The postconviction court further determined that the changes in the

witnesses' testimony were not material to Petitioner's conviction because they did

not prove or disprove an element of any of the charged crimes. *Id.* at 8. These

findings were reasonable based on the underlying record and transcripts.

Further, under the *Strickland* test, Petitioner has failed to establish the

necessary elements. Ineffective assistance of counsel claims require proof of both

deficient performance and consequent prejudice. *Strickland*, 466 U.S. at 697.

"[C]ounsel is strongly presumed to have rendered adequate assistance and made all

significant decisions in the exercise of reasonable professional judgment." *Id.* at

690. "[A] court deciding an actual ineffectiveness claim must judge the

reasonableness of counsel's challenged conduct on the facts of the particular case,

viewed as of the time of counsel's conduct." *Id.* at 690.

*Strickland* cautions that "strategic choices made after thorough investigation

of law and facts relevant to plausible options are virtually unchallengeable; and

11

strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* at 690–91. Petitioner's trial counsel testified at the postconviction evidentiary hearing that he reviewed the prior transcripts and decided not to "nit-pick" the inconsistencies to retain credibility with the jury. This was a reasonable strategic choice. Thus, Petitioner's trial counsel was not deficient.

b. <u>Ground Five</u>

In Ground Five Petitioner argues that he was denied his Sixth Amendment right to effective counsel because of his trial counsel's failure to call witnesses who would have rebutted the state's case. Dkt. 1 at 19. Petitioner argues that he provided his trial counsel with information concerning Miguel Cabrera and William Arvelo, both of whom would have been willing and able to testify for the defense. *Id.* Respondent argues that the postconviction court dismissed the claim regarding Cabrera because Petitioner failed to allege he was available to testify. Dkt. 7 at 9. Arevlo testified at a postconviction court evidentiary hearing where he denied knowing or working with Petitioner, however the postconviction court did not find Arevlo's testimony credible or, even if it was credible, it was not exculpatory for Petitioner. Dkt. 9-29 at 8–11. The postconviction court further questioned if Arvelo would even be available to testify for Petitioner since he had agreed to testify for the State in Petitioner's case and then subsequently refused to

do so. *Id.* at 11.

As to Cabrera, the state postconviction court denied his motion with prejudice when Petitioner failed to cure the facial deficiency in his motion because he failed to establish that Cabrera was available to testify on his behalf at the time of trial. Dkt. 9-22 at 9–10. Federal habeas review "requires federal habeas courts to presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.'" *Nejad*, 830 F.3d at 1289 (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473–74 (2007)). The state postconviction court made reasonable factual determinations and interferences, and Petitioner has presented no evidence to rebut them.

Further, the Petitioner's counsel testified at the postconviction evidentiary hearing that he investigated Cabrera but that he thought Cabrera's testimony would not help Petitioner. Dkt. 9-24 at 10. The decision whether to call a witness is a strategic one. "While attorneys may disagree as to how many or what particular witnesses to call, such is the stuff out of which trials are made." *Solomon v. Kemp*, 735 F.2d 395, 404 (11th Cir. 1984). Thus, even if considered on the merits, counsel's choice not to call Cabrera was a strategic one and not a violation under *Strickland*.

The postconviction court's findings regarding Arvelo are a reasonable interpretation of the record. Arvelo's testimony directly conflicted with his plea

and thus lacked credibility. Rios argues that the postconviction court was wrong about Arvelo's testimony and that Arvelo was telling the truth about it being his brother on the recorded phones calls not Arvelo. Even assuming what Petitioner argues is true, this was not the sole basis for the postconviction Court to reject Arevlo's testimony.

Regardless, under the deferential AEDPA, the Court cannot say that the postconviction court applied *Strickland* unreasonably in determining that Petitioner was not prejudiced. Accordingly, Ground Five must be denied.

c.  <u>Ground Six</u>

In Ground Six Petitioner argues that he was denied his Sixth Amendment right to effective counsel because of his trial counsel's failure to introduce impeachment evidence. Dkt. 1 at 22. Specifically, Petitioner alleges that his trial counsel knew of the existence of a recorded conversation between Oscar Gonzalez and Petitioner while being held in the back of the patrol car after they were stopped by the police, which could have impeached Gonzalez. Respondent argues that the state postconviction court reasonably found that such a tape did not exist and that it would not have had an effect on the trial, so Petitioner could not prove deficient performance or prejudice. Dkt. 7 at 14.

Petitioner first argues that Respondent admitted to the existence of the recorded conversation in a brief filed with the Florida Second District Court of

14

Appeal. Dkt. 18 at 18. However, in the brief the Respondent discussed how there

was a recording from the back of the police car on December 10 but that it was a

conversation between Petitioner and Jose Lubin, not Gonzalez. Dkt. 9-31 at 47–48.

Second, Petitioner asks this Court to review the same police report which describes

the recording that he offered to the state postconviction court. The postconviction

court found that this police report "reflects the existence of a recording between

[Petitioner] and Lubin" which was insufficient to meet his postconviction burden.

Dkt. 9-29 at 12–13. The evidence in the record reflects that Gonzalez was not part

of the alleged recording; as such, it could not have been used to impeach Gonzalez

in the manner Petitioner describes. Petitioner has failed to rebut by clear and

convincing evidence the presumption of correctness of the state postconviction

court's factual findings. Thus, Petitioner failed to prove deficient performance or

prejudice. Accordingly, Ground Six is denied.

### d. Ground Seven

Petitioner conceded that Ground Seven is procedurally barred and asked the

Court to dismiss it. As such, Ground Seven is dismissed.

### e. Ground Eight

In Ground Eight Petitioner argues that he was denied his Sixth Amendment

right to effective counsel because of his trial counsel's failure to recognize and

properly argue that the State's amended information allowed Petitioner to be

convicted of uncharged crimes.[2] Dkt. 1 at 28. Respondent argues that Petitioner was not convicted of uncharged crimes and that the information was properly amended so any objection made by Petitioner's trial counsel would have been overruled. Dkt. 7 at 15.

First, the postconviction court found that the information was properly amended. Dkt. 9-24 at 14. Next, the postconviction court found that the State only had to prove two predicate acts to establish a RICO violation pursuant to Florida Statute § 895.03. Petitioner was charged and found guilty of counts two, three, four, five, and twenty-five: RICO, conspiracy to commit RICO, conspiracy to traffic in heroin, and two counts of trafficking in illegal drugs. Dkt. 9-24 at 12–13. Petitioner was neither charged with nor found guilty of count seventeen, as he argues in his Petition. The Petitioner was not convicted on uncharged crimes. Dkt. 9-24 at 14. This Court presumes the correctness of the state court's factual findings unless the Petitioner can rebut them by clear and convincing evidence. *Nejad*, 830 F.3d at 1289. Petitioner has not done so. Accordingly, Ground Eight is denied.

 f. <u>Ground Nine</u>

In Ground Nine Petitioner argues that he was denied his Sixth Amendment

---

[2] Petitioner's arguments on this point are unclear, but to the extent that Petitioner in challenging what qualifies as a predicate for RICO under Florida law, the final arbitrators on questions of state law are the Florida courts. *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to re-examine state-court determinations on state-law questions.").

right to effective counsel because of his trial counsel's failure to object to the

State's erroneous jury instructions which caused the court to read the principal

instruction[3] that is not applicable to conspiracy. Dkt. 1 at 31. Petitioner also argues

that the prosecutor's remarks about this principal theory during closing argument

were improper. Respondent argues that the instruction was properly given under

state law.

Petitioner argues his counsel was ineffective for failing to object to a jury

instruction. "An error in instructing the jury cannot constitute a basis for federal

habeas relief unless the error 'so infected the entire trial that the resulting

conviction violates due process.'" *Romanes v. Sec'y, Dep't of Corr.*, 621 F. Supp.

2d 1249, 1263 (M.D. Fla. 2008) (quoting *Henderson v. Kibbe*, 431 U.S. 145, 154

(1977)).

The postconviction court found that "the principal jury instruction read at

[Petitioner's] trial was the standard jury instruction on principal. . . . [and] there

was no basis for counsel to object to the principal instruction." Dkt 9-29 at 18. The

postconviction court further distinguished this case from *Evans*—which Petitioner

---

[3] "Instruction on principals. If the defendant helped another person or persons commit a crime, the defendant is a principal and must be treated as if he had done all the things the other person or persons did if (1) the defendant had a conscious intent that the criminal act be done and (2) the defendant did some act or said some word which was intended to and which did incite, cause, encourage, assist or advise the other person or persons to actually commit the crime. To be a principal, the defendant does not have to be present when the crime is committed." Dkt. 9-1 at 536.

cited in support of his arguments both to the postconviction court and this Court—

holding that Florida courts do "not construe *Evans* to hold that the principal

instruction is inappropriate whenever conspiracy is tried along with substantive

offenses." *Id.* at 19. Finally, the postconviction court found "nothing in the manner

in which the principal instruction was read at [Petitioner's] trial (after the

trafficking instruction and before the instruction on [Petitioner's] not guilty plea)

which would confuse or mislead the jury into misapplying the concepts of

principal and conspiracy and thus, [found Petitioner] cannot demonstrate sufficient

prejudice under *Strickland*." *Id.*

Petitioner challenges the reading of the principal jury instruction. Such a

challenge has been analyzed in two recent cases by this Court. *Scott v. Sec'y, Dep't*

*of Corr.*, No. 5:16-CV-684-OC-36PRL, 2020 WL 1433058 (M.D. Fla. Mar. 24,

2020); *Cooper v. Sec'y, Fla. Dep't of Corr.*, Case No. 3:10-cv-951-J-32JRK (M.D.

Fla. Oct. 26, 2015). *See also Romanes*, 621 F. Supp. 2d at 1263–64. In both cases

this Court held "any error regarding the jury instruction on the principal theory was

harmless where the evidence clearly demonstrated that Petitioner was an active

participant in the conspiracy." *Scott*, 2020 WL 1433058, at \*13. Here, as in *Scott*

and *Cooper*, Petitioner was an active participant in the conspiracy. The

postconviction court's determination that Petitioner was not prejudiced under

*Strickland* is a finding entitled to deference. This finding was not an unreasonable

18

application of *Strickland*, or an unreasonable determination of the facts in light of the evidence adduced in state court. Thus, Petitioner is not entitled to relief on this ground.

Petitioner also argues that his counsel was ineffective for failing to object to the prosecutor's remarks about the principal instruction during the prosecution's closing argument. The postconviction court found that the prosecutor's "comments were proper statements of the law on the concepts of principal and conspiracy. . . . [and] the comments placed in context of the closing are not improper or unduly prejudicial, and therefore, [Petitioner] has failed to establish deficient conduct." Dkt. 9-29 at 17.

"In a federal habeas corpus petition, allegedly improper prosecutorial remarks are reviewed to determine whether, in the context of the entire trial, such remarks were sufficiently prejudicial to violate the petitioner's due process rights." *Crenshaw v. Sec'y, Fla. Dep't of Corr.*, No. 16-17735-D, 2017 WL 6761058, at *6 (11th Cir. 2017) (citation omitted). "Such a determination depends on whether there is a reasonable probability that, in the absence of the improper remarks, the outcome of the trial would have been different." *Williams v. Weldon*, 826 F.2d 1018, 1023 (11th Cir. 1987). "Thus, to establish prosecutorial misconduct, a two-prong test must be satisfied: (1) the prosecutor's comments must have been improper; and (2) the comments must have rendered the trial fundamentally

unfair." *Crenshaw*, 2017 WL 6761058, at *6 (citing *United States v. Eyster*, 948 F.2d 1196, 1206 (11th Cir. 1991)).

Petitioner has failed to meet the first prong of this test. Petitioner failed to prove that the comments were improper. "It is a 'fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters.'" *Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1355 (11th Cir. 2005) (quoting *Agan v. Vaughn*, 119 F.3d 1538, 1549 (11th Cir. 1997)). The state court found that the comments were proper statements of Florida law, and this Court will not "second-guess" them on that matter. Because the comments were not improper, Petitioner's trial counsel was not ineffective for failing to object to them. *Sneathen v. Sec'y, Dep't of Corr.*, 787 F. App'x 567, 574 (11th Cir. 2019) ("[T]rial counsel cannot be faulted for failing to make a meritless objection.").

Finally, Petitioner argues that this Court should grant relief on this Ground because the postconviction judge granted relief on a similar ground for a different defendant in an unrelated case. Dkt. 18 at 23. As an initial matter this argument is unexhausted for federal habeas purposes as it was not raised in state court. Further, Petitioner's argument is based on a faulty premise. What the postconviction judge did in an unrelated case has no bearing on what the postconviction judge did in the Petitioner's case. The postconviction court's factual findings are entitled to

deference under AEDPA and Petitioner has failed to meet his burden under *Strickland* to prover either prejudice or deficient performance as a result of the prosecutor's remarks during closing or the principal jury instruction. Accordingly, Petitioner is denied relief on Ground Nine.

g.  Ground Ten

In Ground Ten Petitioner argues that he was denied his Sixth Amendment right to effective counsel because of his trial counsel's failure to object to the prosecutor's misstatement of evidence in closing argument deprived Petitioner of a fair and impartial trial. Dkt. 1 at 34. Petitioner argues that the prosecutor wrongly implied that exhibit 46, a role of brown packing tape, was found in his car in an attempt to connect him to the heroin ring when it was actually found in Oscar Gonzalez's car. *Id.* Respondent argues that the postconviction court found that the tape at issue was found in Petitioner's car. Dkt. 7 at 18.

The postconviction court found, contrary to Petitioner's argument, that the evidence at trial was that exhibit 46, the tape, was found in Petitioner's car. Dkt. 9-24 at 17. AEDPA "requires federal habeas courts to presume the correctness of state court's factual findings unless applicants rebut this presumption with 'clear and convincing evidence.'" *Nejad*, 830 F.3d. at 1288–89 (citation omitted). Petitioner has failed to rebut these findings.

In support of his argument, Petitioner provides the same trial testimony that

the state postconviction court already determined established the tape was found in Petitioner's car. Dkt. 9-1 at 134–42. Petitioner also provided a new document he labeled "Exhibit D" and included with his petition. Dkt. 2-4. However, this document, even taken at face value, does not rebut the factual finding that the tape admitted at Petitioner's trial was found in Petitioner's car. It instead references a brown packing tape related to Oscar Gonzalez, which is consistent with Detective Massucci's testimony that tape similar to exhibit 46 was found when searching Oscar Gonzalez's property. This does not prove by clear and convincing evidence that the state court's factual findings were incorrect.

As the record established that the tape was found in Petitioner's car, there was nothing improper about the prosecutor discussing that in closing arguments and Petitioner's counsel was not deficient for failing to object. *Sneathen*, 787 F. App'x at 574 ("[T]rial counsel cannot be faulted for failing to make a meritless objection."). Accordingly, Petitioner cannot establish deficient performance and Ground Ten is denied.

h. <u>Ground Eleven</u>

In Ground Eleven Petitioner argues that he was denied his Sixth Amendment right to effective counsel because of his trial counsel's failure "to move to suppress [the] ledger allegedly found in the Petitioner's residence and/or object to the evidence being entered at trial." Dkt.1 at 37. Petitioner argues that his consent to

22

search his home was limited to drugs and that if Petitioner's counsel had moved to suppress or objected to the ledger that it would not have been admitted at trial. *Id.*

The postconviction court found that Petitioner consented to the search of his residence and that it included the ledger and, even if he had not consented, that there was sufficient information to establish probable cause for the search of Petitioner's residence. Dkt. 9-24 at 20–21. The postconviction court found that Petitioner's counsel was not deficient and that Petitioner was not prejudiced. *Id.* As to Petitioner's allegations that his counsel failed to object, the postconviction court found that Petitioner's counsel did object to relevance, hearsay, and authentication of the ledger. *Id.* at 21–22. The postconviction court found that Petitioner's counsel was not deficient, and that Petitioner was not "prejudiced as any further objections would have been overruled." *Id.* at 22. Respondent argues that these findings were reasonable under *Strickland*. Dkt. 7 at 21.

Primarily, Petitioner argues that had his counsel moved to suppress the ledger there was a reasonable chance it would have been suppressed and the outcome of the trial would have been different. Petitioner bases this argument on his understanding that he only consented for the officers to look for drugs and that this did not include the ledger.

However, the standard for determining the scope of a consent search is not the Petitioner's reasonable understanding. "The standard for measuring the scope

23

of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Florida v. Jimeno*, 500 U.S. 248, 251 (1991). The postconviction court reasonably found that objective scope of Petitioner's consent included the ledger. Petitioner did not rebut this finding by clear and convincing evidence.

Even if this Court accepted Petitioner's argument that the ledger was outside the objective scope of Petitioner's consent, the postconviction court also found that the officers had sufficient information to establish probable cause for the search. Dkt. 9-24 at 20. Petitioner did not contest this finding. Thus, Petitioner's counsel's performance was not deficient, and Petitioner was not prejudiced.

As to Petitioner's argument that his counsel failed to object to the ledger during the trial, the postconviction court found, contrary to Petitioner's allegations, that his counsel did object to the ledger. Dkt. 9-24 at 21–22. In his Petition, Petitioner merely made conclusory allegations that his counsel failed to object. Dkt. 1 at 37. This is insufficient to rebut the presumption of correctness given to the postconviction court's findings of fact. Accordingly, Ground Eleven is denied.

i. Ground Twelve

In Ground Twelve Petitioner argues that he was denied his Sixth Amendment right to effective counsel because of his trial counsel's failure to

24

object and preserve for the record that the State failed to prove subject matter jurisdiction and the elements of count twenty-five, trafficking in illegal drugs. Dkt. 1 at 40. Petitioner argues that the only evidence presented to support count twenty-five was him being seen with his co-defendants in New York and Maglione being caught at the airport with heroin. *Id.* Petitioner argues that this evidence has no connection to Florida, thus Florida has no subject matter jurisdiction. *Id.*

The postconviction court found that there was sufficient subject matter jurisdiction for count twenty-five; that the record reflective an extensive criminal organization that "stretched from Tampa, Florida to Orlando, Florida to New York City." Dkt. 9-29 at 14. Both DEA agents and Tampa police officers observed that the conduct in New York was intended to restock the heroin supply in Tampa, thus the conduct that occurred outside of Florida connected to offenses in Florida. *Id.* The postconviction court found that this conduct was sufficient to confer subject matter jurisdiction under Florida Statute § 910.005 and Petitioner's counsel was not ineffective for failing to make a meritless objection. Dkt. 9-29 at 15. Petitioner has not rebutted these factual findings by clear and convincing evidence; thus, they are presumed to be correct. As there was subject matter jurisdiction, Petitioner's counsel was not ineffective for failing to object. *Sneathen*, 787 F. App'x at 574.

Petitioner also argues that his counsel was ineffective for failing to object to the State's failure to prove that Petitioner knowingly possessed heroin. Dkt. 1 at

40. Petitioner argues that no evidence presented at trial proved he constructively

possessed heroin or that he knew the substance was heroin. *Id.*

      This claim was initially rejected by the Florida Second District Court of

Appeal in 2008 when Petitioner filed a state petition alleging ineffective assistance

of appellate counsel. Dkts. 9-15; 9-12 at 11; 9-14 at 4. The postconviction court

found that Petitioner's counsel testified he requested the four-element instruction

on trafficking which included the "knowledge" element and that he presented case

law to support that instruction. Dkt. 9-29 at 15. The trial judge ruled in favor of

having a three-element instruction, which did not include a knowledge element. *Id.*

at 15–16. The postconviction court found that the record refutes Petitioner's claim

that his counsel failed to object and that any further objection from counsel would

have been futile. *Id.* at 16. Finally, as to Petitioner's allegation that counsel failed

to preserve the issue for appeal, the postconviction count found that failure to

preserve this matter for appeal does not establish sufficient prejudice under

*Strickland*. *Id.*

      Petitioner cites to *Shelton* and *Adkins* in support of his position. *Shelton v.*

*Sec'y, Dep't of Corr.*, 802 F. Supp. 2d 1289 (M.D. Fla. 2011); *State v. Adkins*, 96

So. 3d 412 (Fla. 2012). First, Petitioner was convicted at trial under section

893.135 which is a different statute than was discussed in either *Shelton* or *Atkins*.

However, even if that reasoning applied to Petitioner's case, *Shelton* was not

issued until after the disposition of Petitioner's case, so Petitioner fails to establish

a basis on which his appellate counsel could have argued his trial counsel was

ineffective. Further, *Shelton* was later reversed, *Shelton v. Sec'y, Dep't of Corr.*,

691 F.3d 1348 (11th Cir. 2012), and the Florida Supreme Court upheld the statute

in *Adkins*. *See Rogers v. Sec'y, Dep't of Corr.*, No. 8:13-CV-2368-T-27EAJ, 2016

WL 398049, at *7 (M.D. Fla. Feb. 2, 2016). Petitioner has not articulated what

clearly established federal law was unreasonably applied and this Court cannot

grant "habeas relief on the basis of little more than speculation[.]" *See Wood v.

Bartholomew*, 516 U.S. 1, 8 (1995)

Moreover, to the extent the state court's determination rests on the

interpretation and application of state law, deference must be afforded to the state

court's decision. *See McGuire*, 502 U.S. at 67. Petitioner has not established that

the state appellate court's rejection of his claim was contrary to, or an unreasonable

application of, clearly established federal law or was based on an unreasonable

determination of the facts. Thus, Ground Twelve is denied.

j.  Ground Thirteen

In Ground Thirteen Petitioner argues that the cumulative effect of Grounds

Four through Eleven amount to ineffective assistance of counsel. Dkt. 1 at 43. Yet

the Court has determined that each of his ineffective assistance claims is meritless

so there can be no cumulative error. *See, e.g., Morales v. Sec'y, Fla. Dep't Corr.*,

710 F. App'x 362, 365 (11th Cir. 2017) ("[W]e have rejected all of the claims of error before us. There are, therefore, no errors to cumulate."). Accordingly, Ground Thirteen is denied.

## Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." Rule 11(a), Rules Governing Section 2254 Proceedings for the United States District Courts; *see Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). To merit a COA, Petitioner must show that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues he seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir. 2001). Because he fails to show that reasonable jurists would debate either the merits of the claims or the procedural issues, Petitioner is not entitled to either a COA or leave to appeal *in forma pauperis*.

Accordingly, a certificate of appealability is denied. Leave to appeal *in forma pauperis* is denied. Petitioner must obtain permission from the circuit court to appeal *in forma pauperis*.

## Conclusion

The Court denies Petitioner's Amended Petition with prejudice. Dkt. 1. The

Clerk is directed to enter judgment accordingly, terminate any pending motions,

and close the file.

**DONE AND ORDERED** at Tampa, Florida, on June 9, 2020.


*/s/ William F. Jung*

**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO**:
Counsel of Record
Petitioner, pro se